**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EDWARD E. MCLINN,

    Defendant - Appellant.

No. 17-3083

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:14-CR-20098-CM-1)**
_____

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender and Chekasha Ramsey, Assistant Federal Public Defender with him on the briefs) Office of the Federal Public Defender, Kansas City, Kansas, appearing for the appellant.

Stephen R. McAllister, United States Attorney (Thomas E. Beall, United States Attorney and Carrie N. Capwell, Assistant United States Attorney on the brief) Office of the United States Attorney, Kansas City, Kansas, appearing for the appellee.
_____

Before **MATHESON**, **McKAY**, and **EBEL**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

In this criminal case Defendant Edward McLinn appeals the district court's

denial of his motion to dismiss the indictment for failure to state an offense under

Fed. R. Crim. P. 12(b)(3)(B)(v). Because the district court mistakenly treated the

dispositive issue in this case as a fact question properly reserved for the jury, we VACATE the district court's order and REMAND for further proceedings consistent with this opinion.

## I.     Background

On August 27, 2013, Lawrence, Kansas, police officers responded to a call at a local gas station to find Mr. McLinn wandering the premises wrapped only in a shower curtain.  The officers observed that Mr. McLinn had "chemical burns on his person, bloodshot eyes, and other minor injuries[,]" but when they initially asked McLinn about drug use he responded that he had used methamphetamine "approximately 3 ½ years" earlier, and that his symptoms were the result of having been cleaning his house with heavy cleaners.  R. Vol. I at 84

When the officers asked Mr. McLinn how he came to be at the gas station, he indicated he had fled his residence through the window in his shower because he was afraid the police were pumping "knock-out gas" into his home.  Id.  Worried about his dogs and the effect of the gas on their well-being, McLinn "panicked and left the residence by climbing out a window, only wearing the shower curtain."  Id.  Mr. McLinn "later admitted that he had used methamphetamine the night before," at which point he became "concerned the police were going to get a search warrant for his house, so he began to clean the residence with industrial cleaner."  Id.  Concerned for Mr. McLinn's own safety, the officers on the scene had him taken to a local emergency room.

2

The same day Mr. McLinn arrived at the emergency room, Leah Hadl, apparently a hospital employee, petitioned the district court for Douglas County, Kansas, for a determination of mental illness. In a written petition, Ms. Hadl indicated her belief that Mr. McLinn was "a mentally ill person subject to involuntary commitment," that he was "suffering from a severe mental disorder," that he lacked "the capacity to make an informed decision concerning treatment," and that he was "likely to cause harm to [him]self or others, if not immediately detained." R. Vol. III at 38. She explained that when he arrived at the emergency room, Mr. McLinn exhibited "extreme psychosis with visual hallucinations . . . auditory hallucinations . . . [and] paranoia." Id. at 39. She ultimately requested that Mr. McLinn be placed in protective custody, and ordered to undergo mental health evaluation at Osawatomie State Hospital ("OSH").

Two days later, on August 29, 2013, the state court convened a hearing to determine whether there was probable cause to believe that Mr. McLinn should be involuntarily committed. After the hearing, at which Mr. McLinn was represented by counsel, the state court determined that "there [was] probable cause to believe that Edward E. McLinn [was] suffering from a severe mental disorder, lacks the capacity to make an informed decision concerning treatment and [was] likely to cause harm to [him]self or others[.]" Id. at 44 (emphasis added). On the basis of this determination, the state court ordered that Mr. McLinn would be detained at OSH "until such time and date that the . . . County District Court sets the matter for trial,

but in no event later than 14 days from the filing of the application [for involuntary commitment]." Id.

Under Kansas law, a mental health facility, such as OSH, is required to discharge any patient who has been involuntarily committed to its care "when the patient is no longer in need of treatment." Kan. Stat. Ann. § 59-2973(a). Apparently pursuant to this requirement, Mr. McLinn was discharged from OSH on September 3, 2013, less than a week after he had originally been admitted. As part of the discharge process, Mr. McLinn was required to sign a document entitled "Discharge Instructions," which included language indicating that "it is a violation of the law for any person who has been involuntarily civilly committed to possess a firearm. For the restoration of the ability to legally possess a firearm, a petition must be filed in the District court where treatment was ordered." R. Vol. I at 54 (emphasis omitted).

Roughly a year later, a number of City Commissioners in Lawrence began to receive a series of bizarre emails. The emails referred to firearms and explained that police were surveilling the author using "see-thru-walls surveillance" technology. Id. at 85. Police launched an investigation into the emails, which ultimately led them to Mr. McLinn's public Instagram account, on which he had posted several photos of himself with firearms.

Using this account, police obtained and executed a search warrant for Mr. McLinn's residence. There they recovered "a .45 caliber Sig Sauer pistol," "a fully constructed .223 caliber Stag Arms rifle," and "a camouflage tactical vest with plates." Id. at 86. Police then arrested Mr. McLinn and charged him with, among

4

other offenses, possession of a firearm by an individual who has been adjudicated as a mental defective and committed to a mental institution in violation of 18 U.S.C. §§ 922(g), 924(a)(2).[1]

Mr. McLinn moved to dismiss this count of the indictment for failure to state an offense. See Fed R. Crim. P. 12(b)(3)(B)(v). The basis for his motion relevant on appeal was that "the government will be incapable of proving that a Kansas court's temporary custody order authorizing Mr. McLinn's short-term detention in a state hospital pending trial on a civil commitment petition was a qualifying adjudication or commitment for 18 U.S.C. § 922(g)(4) purposes." R. Vol. III at 21–22. The district court denied Mr. McLinn's motion "without prejudice." R. Vol. II at 64.

Following this adverse ruling, Mr. McLinn entered a conditional guilty plea to this count of the indictment, reserving the right to appeal the denial of his motion to dismiss. Under the terms of this agreement the government agreed to dismiss the remaining counts of Mr. McLinn's indictment. Mr. McLinn was subsequently sentenced to time-served followed by a three-year term of supervised release. He timely appealed, perfecting our jurisdiction under 28 U.S.C. § 1291.

## II.    Discussion

Federal law makes it unlawful for any person "who has been <u>adjudicated</u> as a mental defective or who has been <u>committed</u> to a mental institution" to possess a

---

[1] Mr. McLinn and his father were also charged with several additional firearm violations involving illegally purchasing firearms on behalf of—or illegally transferring firearms to—a person who is prohibited by law from possessing such firearms.

firearm. 18 U.S.C. § 922(g)(4) (emphasis added). However, these two qualifying events are not as clear as they might initially seem. Under the "adjudication" test, we will have to determine whether a finding of "probable cause" that a defendant is a mental defective is an "adjudication" of that condition. The second test—whether a defendant has been "committed to a mental institution"—on its face does not appear ambiguous. But this terminology may have been rendered more ambiguous because of its interpretation in 27 C.F.R. § 478.11, which concludes that "the term [committed to a mental institution] does not include a person in a mental institution for observation . . . ."

Mr. McLinn does not challenge the government's contention that he possessed firearms, but instead moved to dismiss the indictment on the grounds that he had been neither (1) adjudicated a mental defective, nor (2) committed to a mental institution. The district court denied Mr. McLinn's motion.

**A. The District Court's Order**

We review orders granting or denying a motion to dismiss an indictment for abuse of discretion, but we review any statutory interpretation issues in the ruling de novo. United States v. Theis, 853 F.3d 1178, 1181 (10th Cir. 2017).

It is this latter circumstance which is in play in this appeal. The threshold question presented in this case is whether the issue of whether the defendant has been adjudicated a mental defective or committed to a mental institution (as defined by 27 C.F.R. § 478.11) is a question of law to be determined by the court or a question of fact to be determined by the jury.

6

It seems clear that these are questions of law properly determined by the court. First and foremost, it is a question of statutory interpretation, and we have always considered such questions quintessentially legal in nature. See, e.g., United States v. Lynch, 881 F.3d 812, 815 (10th Cir. 2018). Furthermore, in 1982, we held— apparently as a matter of law—that a predecessor statute to § 922(g)(4) outlawing possession of a firearm by anyone who had been "adjudged by a court of the United States or of a state or any political subdivision thereof of being mentally incompetent" "applie[d] to persons who have been found not guilty by reason of insanity." Redford v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms, 691 F.2d 471, 473, 473 n.1 (10th Cir. 1982) (interpreting 18 U.S.C. § 1202 (1976)).

Looking beyond our own borders only bolsters this conclusion. At this point, every court of appeals to have addressed the issue has held that whether a defendant's adjudication or commitment qualifies under the current version of § 922(g)(4) is a question of law to be determined by a judge rather than a question of fact reserved for the jury. See, e.g., United States v. McIlwain, 772 F.3d 688, 693 (11th Cir. 2014); United States v. Rehlander, 666 F.3d 45, 47 (1st Cir. 2012); United States v. Dorsch, 363 F.3d 784, 785 (8th Cir. 2004); United States v. Vertz, 40 F. App'x 69, 76 (6th Cir. 2002) (unpublished); United States v. Midgett, 198 F.3d 143, 145–46 (4th Cir. 1999); United States v. Waters, 23 F.3d 29, 36 (2d Cir. 1994).

We therefore conclude that whether a defendant has been adjudicated a mental defective or committed to a mental institution for the purposes of § 922(g)(4) is a

7

question of law to be determined by the court rather than a question of fact to be reserved for the jury.

We do not believe that the district court treated this issue as a question of law. While the court's statements could be construed as ambiguous, a review of the parties' pleadings demonstrates that the court was primed to consider this question as one appropriate for the jury. In the "Introduction and Argument Summary" of his motion to dismiss, Mr. McLinn seems to suggest that the question is whether the government will be able to prove to a jury that Mr. McLinn had been committed or adjudicated a mental defective. R. Vol. III at 21–22. ("More specifically, . . . the government will be incapable of proving that a Kansas court's temporary custody order authorizing Mr. McLinn's short-term detention in a state hospital pending trial on a civil commitment petition was a qualifying adjudication or commitment for 18 U.S.C. § 922(g)(4) purposes.").

The government picked up on this suggestion. The opening line of the relevant section in its response argued that McLinn "is in essence seeking a pre-trial determination of his guilt by this Court." R. Vol. I at 46. The government then described Mr. McLinn's argument as "not legal, but [] instead factual – that he is innocent under the law." Id. at 47. It then cited the "incapable of proving" line from Defendant's motion mentioned above, before explicitly arguing that the issues presented by Mr. McLinn's motion "are strictly jury questions." Id.

Against this backdrop it seems clear the district court accepted both parties' invitation to treat this as an issue of fact. The district court denied Mr. McLinn's

8

motion "without prejudice," and noted that "[g]enerally, the sufficiency of the government's evidence to support a charge may not be challenged by a pretrial motion." R. Vol. II at 64. In light of the suggestions contained in both parties' pleadings, this is sufficient for us to conclude that the district court erred by not ruling on Mr. McLinn's motion to dismiss as a matter of law, but instead treating the issue of Mr. McLinn's adjudication or commitment as one properly determined by a jury.[2]

## B. Remedy

That conclusion leaves us with the difficult question of what remedy is appropriate. At oral argument, the government suggested that we could rule on the record before us that Mr. McLinn's commitment satisfied one or both of the § 922(g)(4) requirements as a matter of law.

We are not so persuaded. The operative legal question under the first test of § 922(g)(4) presents the legal question of whether the state court's determination that there was "probable cause to believe that Edward E. McLinn [was] suffering from a severe mental disorder, [that he] lack[ed] the capacity to make an informed decision concerning treatment and [was] likely to cause harm to [him]self or others," R. Vol. III at 44, was a sufficient "adjudication" under the statute. Under the second qualifying criteria, the question is whether Mr. McLinn was "involuntarily committed" to a mental institution given that this term has been defined in 27 C.F.R § 478.11 to exclude commitment "for observation."

---

[2] Harmless error was not raised in this case, and accordingly we do not address it.

Despite these being legal questions, we simply do not have enough information in the record before us to make these determinations. Not only was the question of whether the defendant qualifies under either the "adjudicated" or "committed" clauses of § 922(g) not briefed, but we generally do not decide questions not fully addressed by the district court. See United States v Ladeaux, 454 F.3d 1107, 1110 (10th Cir. 2006) (citing United States v. Foote, 413 F.3d. 1250 1251–52 (10th Cir. 2005)).

Furthermore, based on the ancillary charges that could be reinstated should Defendant prevail in his legal argument, we are convinced it would be prudent to defer our review until the parties and the district court have had a chance to consider fully the merits and equities at issue. Accordingly, we hereby VACATE the denial of the motion to dismiss and REMAND to the district court to determine as a matter of law whether Mr. McLinn was (1) adjudicated as a mental defective or (2) committed to any mental institution as those terms are used in 18 U.S.C. § 922(g)(4).