135 Nev., Advance Opinion 34

IN THE SUPREME COURT OF THE STATE OF NEVADA

IAN ANDRE HAGER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72613

**FILED**

AUG 29 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of six counts of possession of a firearm by a prohibited person. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

*Reversed and remanded.*

John L. Arrascada, Public Defender, and John Reese Petty, Chief Deputy Public Defender, Washoe County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, Terrence P. McCarthy, Chief Appellate Deputy District Attorney, and Joseph R. Plater, Appellate Deputy District Attorney, Washoe County,
for Respondent.

BEFORE GIBBONS, C.J., PICKERING and HARDESTY, JJ.

*OPINION*

By the Court, PICKERING, J.:

NRS 202.360 (2015) makes it a felony for certain categories of prohibited person to possess a firearm. A jury convicted Ian Hager of six counts of violating this statute. Counts one through three charged Hager

with violating NRS 202.360(2)(a) by virtue of him possessing specified firearms as a person who has "been adjudicated as mentally ill . . . by a court of this State, any other state or the United States." Counts four through six charged Hager with illegally possessing the same firearms based on his status as a person who is "an unlawful user of, or addicted to, any controlled substance." NRS 202.360(1)(d).

This appeal presents questions as to both categories of prohibited person. First, is a defendant who is assigned to and successfully completes a mental health specialty court diversion program under NRS 176A.250 through NRS 176A.265 (2013) thereby "adjudicated as mentally ill," making it illegal for him to possess a firearm under NRS 202.360(2)(a)? Second, was it harmless error to instruct the jury in a way that theoretically allowed Hager to be convicted of illegal possession of a firearm by an "unlawful user" of a controlled substance under NRS 202.360(1)(d) based on a single current use of the substance?

We hold that Hager's assignment to and successful completion of a Nevada mental health court diversion program did not constitute an adjudication of mental illness that made his subsequent possession of a firearm a felony under NRS 202.360(2)(a). We further hold that, under NRS 202.360(1)(d), the jury should have been instructed that an "unlawful user" of a controlled substance is someone who regularly uses the substance, in a manner not medically prescribed, over a period of time proximate to or contemporaneous with possession of a firearm. Based on these holdings, we reverse the judgment of conviction as to counts one through three, and reverse and remand for a new trial before a correctly instructed jury as to counts four through six.

## I.

In February 2013, Hager was arrested for outstanding warrants after being stopped for speeding on I-80 in Humboldt County. When they arrested Hager, the police found and confiscated two firearms. The Humboldt County district attorney charged Hager with illegally carrying a concealed weapon and another offense. After negotiations, Hager pleaded guilty to carrying a concealed weapon. In exchange for Hager's plea, the criminal case was suspended, the remaining charge was dismissed, and Hager was referred by Humboldt County to the mental health specialty court program that Washoe County established under NRS 176A.250 through NRS 176A.265.

A licensed mental health professional diagnosed Hager with post-traumatic stress disorder (PTSD) associated with traumatic family events. Hager's PTSD diagnosis, together with the fact he was neither charged with nor previously convicted of a felony involving violence or the threat of violence, made him eligible for Washoe County's mental health court diversion program. As part of the intake process, a presentence investigator interviewed Hager. Then 28 years old, Hager admitted in the interview that he had been addicted to methamphetamine between the ages of 12 and 19 but stated that, with the exception of a one-time use of methamphetamine in January 2013, he no longer used drugs.

After evaluation, and with Hager's consent, Washoe County assigned him to its mental health court diversion program. Among other conditions, the program required random drug and alcohol tests. As a result of his assignment, no judgment of conviction was entered on Hager's guilty plea in Humboldt County. In May 2014, Washoe County discharged Hager from its program based on his having successfully completed it, and

SUPREME COURT
OF
NEVADA

(O) 1947A

3

Humboldt County dismissed its criminal case against him. Hager's "[d]ischarge and dismissal restore[d him], in the contemplation of the law, to the status occupied before the arrest, indictment or information," NRS 176A.260(4), and Hager's records were sealed, NRS 176A.265. After his discharge and dismissal, Hager filled out paperwork asking the State to return his confiscated firearms, which the State did in August 2015.

In 2015, police responded twice to disturbances at Hager's residence, and both times confiscated firearms. Later, Hager again contacted the police about returning his firearms. After completing the necessary paperwork and background check, the police again returned Hager's firearms to him, this time in January 2016.

A month later, in February 2016, Hager contacted a detective to discuss the police department's investigation into Hager's brother's death in 2012. Hager believed his brother had been murdered but the investigation concluded that Hager's brother's death resulted from an accidental methamphetamine overdose, not foul play. Hager asked the detective to reopen the investigation. After looking into the case, the detective told Hager he found nothing to support reopening it. This infuriated Hager, and he sent the detective a link to a video he created and posted on Facebook. The record on appeal does not include the video but the trial transcript indicates that it shows Hager railing against the police for incompetence in attributing his brother's death to an accidental overdose, with Hager snorting a white substance from a baggy to dramatize how much methamphetamine a person can consume without overdosing. The video reportedly shows Hager with firearms beside him.

This and other social media posts Hager made led police to take Hager into custody for illegal possession of firearms. Hager consented to a search of his car, which did not turn up guns or drugs. Police then executed a search warrant at Hager's home and found the firearms underlying the charges in this case. They also found a glass pipe, and empty baggies commonly used to hold drugs, but no controlled substances or trace evidence of them. In the police interview that followed his arrest, Hager admitted possessing the firearms found in his home and that the substance he snorted in the Facebook video was meth—a statement Hager later denied at trial, where he testified the substance was salt.

Hager was charged with three counts of possession of a firearm after having been adjudicated mentally ill and three counts of possession of a firearm while being an unlawful user of, or addicted to, a controlled substance. A jury convicted Hager on all counts, and he appeals.

II.

Similar to its federal counterpart, illegal firearm possession under NRS 202.360 has three main elements: (1) a status element (the defendant falls within one of the categories of person the statute prohibits from possessing a firearm); (2) a possession element ("[a] person shall not . . . have in his or her possession"); and (3) a firearms element ("any firearm"). *See Rehaif v. United States*, 588 U.S. ___, ___, 139 S. Ct. 2191, 2195-96 (2019) (stating the status, possession, and firearms elements of the federal firearms statute, 18 U.S.C. § 922(g) (2012)). Hager admits the possession and firearms elements of the charges against him. His appeal centers on whether the State satisfied the status elements of the two groups of crimes he stands convicted of.

SUPREME COURT
OF
NEVADA

(O) 1947A

5

## A.

### 1.

Counts one through three charged Hager with violating NRS 202.360(2)(a).[1] The status element in that section is that of a person who "[h]as been adjudicated as mentally ill . . . by a court." Reprinted in full for context, NRS 202.360(2) provides:

> *A person shall not* own or *have in his or her possession* or under his or her custody or control *any firearm if the person*:
>
> (a) *Has been adjudicated as mentally ill* or has been committed to any mental health facility *by a court of this State, any other state or the United States*;
>
> (b) Has entered a plea of guilty but mentally ill in a court of this State, any other state or the United States;
>
> (c) Has been found guilty but mentally ill in a court of this State, any other state or the United States;
>
> (d) Has been acquitted by reason of insanity in a court of this State, any other state or the United States; or
>
> (e) Is illegally or unlawfully in the United States.
>
> ↪ A person who violates the provisions of this subsection is guilty of a category D felony and shall be punished as provided in NRS 193.130.

(emphasis added). At trial, the State maintained that Hager had been adjudicated mentally ill in 2013 by virtue of his assignment to Washoe County's mental health court diversion program.

---

[1]Hager participated in Washoe County's mental health specialty court program between 2013 and 2014 and allegedly committed his firearm-possession crimes between November 6, 2015, and April 8, 2016. Unless otherwise noted, references to statutes codified in NRS Chapters 176A and 202 are to the versions in effect at those times, not as later amended. *See* 2013 Nev. Stat., ch. 186, §§ 81-83, at 686-87 (amending the relevant portions of NRS Chapter 176A); 2015 Nev. Stat., ch. 329, § 15, at 1806-07 (amending NRS 202.360).

After the State rested its case, Hager orally moved to dismiss counts one through three.[2] His motion challenged whether assignment to and successful completion of a mental health court diversion program constitutes a sufficient adjudication of mental illness for NRS 202.260(2)(a) to apply. The district court denied the motion, crediting the State's position that this was a question of fact for the jury to decide. But the issue is legal, not factual—requiring us to interpret NRS 202.360(2)(a) and the mental health specialty court procedures and statutes, NRS 176A.250-.265, to determine what assignment to a mental health court diversion program entails and if it qualifies as an adjudication of mental illness for purposes of NRS 202.360(2)(a). Courts interpreting 18 U.S.C. § 922(g)(4), the federal analog to NRS 202.360(2), have uniformly held "that whether a defendant has been adjudicated a mental defective [in a prior state court proceeding] for the purposes of § 922(g)(4) is a question of law to be determined by the court rather than a question of fact to be reserved for the jury." *United States v. McLinn*, 896 F.3d 1152, 1156 (10th Cir. 2018) (noting that "every court of appeals to have addressed the issue has [so] held") (citing cases); *see United States v. Rehlander*, 666 F.3d 45, 47, 50 (1st Cir. 2012). Since the issue is legal, our review of Hager's challenge to the judgment of conviction on counts one through three is de novo, not deferential.

2.

NRS 202.360(2)(a) does not define the phrase "adjudicated as mentally ill." The State cites the *Black's Law Dictionary* (10th ed. 2014) definition of "adjudicate—to rule on judicially" and equates assignment to a mental health court diversion program with an adjudication of mental

[2]Hager also filed a pretrial motion to dismiss that the district court denied as untimely.

illness. Hager counters with definitions of "adjudicate" that imply an adversary proceeding followed by a formal judicial decision, embodied in a final judgment. *See* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 26 (3d ed. 2011) ("*Adjudication* = (1) the process of judging; (2) a court's pronouncement of a judgment or decree; or (3) the judgment so given."); *The American Heritage Dictionary of the English Language* 21 (5th ed. 2011) ("*Adjudicate* = 1. To make a decision in a legal case or proceeding: *a judge adjudicating on land claims*.").

Both interpretations are plausible. In *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), the Supreme Court held that the Second Amendment right to bear arms is a personal right not tethered to any militia. *See McDonald v. City of Chi., Ill.*, 561 U.S. 742, 750 (2010) (holding that the Second Amendment "right is fully applicable to the States"). Though the *Heller* opinion states that nothing in it "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," 554 U.S. at 626, post-*Heller* decisions recognize that "the right to possess arms (among those not properly disqualified) is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process," *Rehlander*, 666 F.3d at 48; *see United States v. McMichael*, 350 F. Supp. 3d 647, 659 (W.D. Mich. 2018). The loss of gun rights that follows a person's adjudication as mentally ill (or "a mental defective" under 18 U.S.C. § 922(g)(4)) or commitment to a mental institution is immediate and, in many instances, effectively permanent. *Beers v. Att'y Gen. U.S.*, 927 F.3d 150, 158-59 (D.C. Cir. 2019). In deciding whether an emergency hospitalization, temporary commitment order, or other summary proceeding qualifies as a sufficient adjudication of mental illness or commitment to make it illegal for an individual thereafter to

SUPREME COURT
OF
NEVADA

(O) 1947A

8

possess a firearm, "an adjudicatory hearing, including a right to offer and test evidence if facts are in dispute, is required." *Rehlander*, 666 F.3d at 48.

Given this context, we conclude that, as used in NRS 202.360(2)(a), "[t]he plain meaning of 'adjudicated' connotes the involvement of a judicial decision-maker, the resolution of a dispute after consideration of argument by the parties involved, and a deliberative proceeding with some form of due process." *Franklin v. Sessions*, 291 F. Supp. 3d 705, 715 (W.D. Pa. 2017) (construing the phrase "adjudicated as a mental defective" in 18 U.S.C. 922(g)(4)).

## 3.

By this measure, assignment to and successful completion of the mental health court diversion program Washoe County established pursuant to NRS 176A.250 "for the treatment of mental illness or intellectual disabilities" does not constitute a sufficient adjudication of mental illness for NRS 202.360(2)(a) to apply. To be sure, mental health court is supervised by a judge, who has the discretion to assign or refuse to assign a defendant to the program. *See* NRS 176A.250 (the mental health specialty court "*may* assign a defendant" to its diversion program) (emphasis added); NRS 176A.260(1) (similar). But participation in the program is voluntary; a defendant may not be diverted to mental health court absent consent. NRS 176A.260(1).

A defendant is eligible for diversion to mental health court if he or she "*appears* to suffer from mental illness or to be intellectually disabled." NRS 176A.255(2)(b) (emphasis added). This standard encompasses conditions—intellectual disability and types of mental illness that do not make a person a danger to him or herself or to others—that may not justify gun dispossession. And the standard is met, not by an adversarial hearing

SUPREME COURT
OF
NEVADA

(O) 1947A

9

at the conclusion of which the judge finds the defendant is in fact mentally ill (or intellectually disabled), but by the submission to the mental health court team of a qualifying diagnosis by a licensed mental health professional, from which it can be said that the defendant "appears to suffer from mental illness or to be intellectually disabled." *Id.*; *see* Second Jud. Dist. Ct., *Policy and Procedure—Specialty Courts* 4, at 2 (eff. July 26, 2016). Unlike a commitment order, which requires a judge to find by clear and convincing evidence that the person is a danger to him or herself or to others, *see* NRS 433A.310(1)(b) (2017)—an adjudication that disarms the person under NRS 202.360(2)(a)—under the specialty court statutes as written at the time relevant to this appeal, a defendant was not eligible for diversion to mental health court if charged with a crime or convicted in the past of a felony involving violence or the threat of violence. *Compare* NRS 176A.260(2) (2013) ("If the offense committed by the defendant involved the use or threatened use of force or violence or if the defendant was previously convicted . . . of a felony that involved the use or threatened use of force or violence, the court may not assign the defendant to the program [unless the prosecuting attorney stipulates to the assignment]"), *with State v. Second Judicial Dist. Court (Hearn)*, 134 Nev., Adv. Op. 96, 432 P.3d 154, 160-61 (2018) (severing the bracketed language from NRS 176A.290(2) (2017), the then-analogous veteran's court statute, as an unconstitutional violation of the separation of powers doctrine).[3] And as Hager's paperwork and the trial

---

[3]The 2019 Legislature amended NRS 176A.260 and NRS 176A.290(2) to eliminate the provisions excluding violent offenders from specialty court unless the prosecuting attorney stipulated and replaced it with separate provisions for mental health and veteran's specialty courts. *See* 2019 Nev. Stat., ch. 388, § 1 (amending NRS 176A.260(2) to provide that "[i]f the offense committed by the defendant is a category A felony or a sexual offense

testimony established, Hager's assignment to Washoe County's mental health court was documented not by an order, decree, or findings signed by a judge, but rather by an "acceptance letter" signed by a specialty courts officer.

NRS 179A.163 and the mental health reporting statutes it collects support that the Legislature has not equated assignment to a mental health court diversion program under NRS 176A.260 with an adjudication of mental illness that makes later possession of a firearm a felony under NRS 202.360(2)(a). State and federal firearms statutes emphasize prevention—keeping firearms out of the hands of those whose possession of them is illegal under 18 U.S.C. § 922(g) and state statutes like NRS 202.360. To that end, when a mental illness adjudication that disqualifies a person from thereafter possessing a firearm occurs in Nevada, the court that enters the adjudication is required, within 5 days, to transmit the record reporting the finding to the Central Repository for Nevada Records of Criminal History, "along with a statement indicating that the record is being transmitted for inclusion in each appropriate database of the National Instant Criminal Background Check System." NRS 159.0593(1) (requiring reporting of the appointment of a guardian for a protected person who has been found, by clear and convincing evidence, to be "a person with a mental defect who is prohibited from possessing a firearm"); *see* NRS 174.035(9) (same, for a defendant from whom a court accepts a plea of guilty but mentally ill); NRS 175.533(3) (same, for a defendant who is found guilty

---

as defined in NRS 179D.097 that is punishable as a category B felony, the defendant is not eligible for assignment to the [mental health specialty court diversion] program."); 2019 Nev. Stat., ch. 388, § 3 (amending NRS 176A.290(2)).

but mentally ill); NRS 175.539(4) (same, for a defendant who is acquitted by reason of insanity); NRS 178.425(6) (same, for a defendant who is found incompetent to stand trial); NRS 433A.310(7) (same, for a person who is involuntarily committed to a mental health facility). On "receiving a record transmitted pursuant to NRS 159.0593, 174.035, 175.533, 175.539, 178.425, or 433A.310, the [Nevada] Central Repository . . . [s]hall take reasonable steps to ensure that the information reported in the record is included in each appropriate database of the National Instant Criminal Background Check System." NRS 179A.163(1). "Mandated by the Brady Handgun Violence Prevention Act of 1993," the National Instant Criminal Background Check System or "NICS is used by Federal Firearms Licensees (FFLs) to instantly determine whether a prospective buyer is eligible to buy firearms. Before ringing up the sale, cashiers call in a check to the FBI or other designated agencies to ensure that each customer does not have a criminal record or isn't otherwise ineligible to make a purchase." Federal Bureau of Investigation, *National Instant Criminal Background Check System (NICS)*, https://www.fbi.gov/services/cjis/nics (last visited 8/5/2019).

Notably, Nevada's mental health court diversion program statutes, NRS 176A.250 through NRS 176A.265, do not include a Central Repository reporting requirement. (In fact, NRS 176A.265(1) provides for the records to be sealed upon successful completion of the program.) Surely, if the Nevada Legislature equated assignment to a mental health court diversion program under NRS 176A.260 with an adjudication of mental illness for purposes of NRS 202.360(2)(a), it would have included in NRS 176A.250 through NRS 176A.265 a mandatory Central Repository report obligation like that imposed by NRS 159.0593, 174.035, 175.533, 175.539, 178.425, or 433A.310. It also would not have omitted NRS 176A.260 from

SUPREME COURT
OF
NEVADA

(O) 1947A

12

the list of adjudications of mental illness that NRS 179A.163(1) requires the Central Repository to see added to all appropriate National Instant Criminal Background Check System databases.

4.

Even accepting the State's argument that assignment to mental health court constitutes an adjudication of mental illness that triggers application of NRS 202.360(2)(a), a defendant who successfully completes such a program is restored to the status he or she occupied before the assignment. NRS 176A.250-.265 create a diversion program: Upon the defendant's assignment, the court "without entering a judgment of conviction[,] . . . suspend[s] further proceedings and place[s] the defendant on probation upon terms and conditions that must include attendance and successful completion of [the] program." NRS 176A.260(1). If the defendant violates a term or condition, the "court may enter a judgment of conviction and proceed as provided in the section pursuant to which the defendant was charged," NRS 176A.260(3)(a)—whereupon, if the crime charged was a felony, the defendant is disarmed by virtue of his status as a convicted felon under NRS 202.360(1)(a). But if the defendant fulfills the terms and conditions imposed, "the court shall discharge the defendant and dismiss the proceedings." NRS 176A.260(4). The statute continues:

> Discharge and dismissal pursuant to this section is without adjudication of guilt and is not a conviction for purposes of this section or for purposes of employment, civil rights or any statute or regulation or license or questionnaire or for any other public or private purpose, but is a conviction for the purpose of additional penalties imposed for second or subsequent convictions or the setting of bail. *Discharge and dismissal restores the defendant, in the contemplation of the law, to the*

SUPREME COURT
OF
NEVADA

(O) 1947A

13

*status occupied before the arrest, indictment or information.*

(emphasis added).

Hager successfully completed Washoe County's mental health court diversion program in 2014. The "[d]ischarge and dismissal" that resulted "restore[d Hager], in the contemplation of the law, to the status [he] occupied before [his] arrest, indictment or information" in Humboldt County in 2013. *Id.* In 2013, Hager did not occupy the status of a person who has "been adjudicated as mentally ill" for purposes of firearm dispossession under NRS 202.360(2)(a). The State charged Hager with illegally possessing firearms between November 2015 and April 2016. By then, his discharge and dismissal from the mental health court diversion program had "restore[d]" him to the pre-assignment status he occupied in 2013. NRS 176A.260(4). Confirming this, the State returned the firearms it confiscated from Hager in 2013 to him in 2015.

The State presses us to accept that NRS 202.360(2)(a)'s use of the phrase "has been adjudicated as mentally ill" signifies a permanent prohibition and that being disarmed as a result of assignment to a mental health court diversion program is a species of "additional penalt[y]," NRS 176A.260(4), that survives dismissal and discharge from the program. But that reading of NRS 202.360(2)(a) cannot be squared with NRS 176A.260(4)'s declaration that discharge and dismissal restores a defendant to his or her pre-assignment status. *Cf. Lewis v. United States*, 445 U.S. 55, 61 n.5 (1980) (rejecting the proposition that a person "who has been convicted" of a felony and thus disarmed by the predecessor statute to 18 U.S.C. § 922(g)(1) retains that status and cannot thereafter legally possess a firearm even if the conviction is later vacated and the felony charge dismissed). The State cannot constitutionally hold "an individual

SUPREME COURT
OF
NEVADA

(O) 1947A

14

criminally responsible for conduct which he could not reasonably understand to be proscribed." *Gallegos v. State*, 123 Nev. 289, 293, 163 P.3d 456, 458 (2007) (internal quotation marks omitted). By its plain terms, NRS 176A.260(4) restored Hager to his pre-2013 arrest status after he successfully completed Washoe County's mental health court program, a reading the State itself confirmed by returning his firearms to him in 2015. Hager's judgment of conviction on counts one through three fails as a matter of law.

## B.

Hager also appeals his conviction on counts four through six, which charged him with illegal possession of firearms by a person who "is an unlawful user of, or addicted to, any controlled substance," a category B felony under NRS 202.360(1)(d). Hager challenges the sufficiency of the evidence to sustain his convictions on these counts and the adequacy of the jury instruction defining "unlawful user."

### 1.

A challenge to the sufficiency of the evidence asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Middleton v. State*, 114 Nev. 1089, 1103, 968 P.2d 296, 306 (1998) (internal quotation marks omitted). As with counts one through three, Hager admits the possession and firearms elements of counts four through six but disputes the status element. Hager asserts that the State failed to provide sufficient evidence that he possessed firearms while being an unlawful user of, or addicted to, drugs because the police did not find any controlled substances in Hager's possession, only drug paraphernalia, which Hager claims he last used many years ago.

 

NRS 202.360(1)(d)'s prohibition against a person who "[i]s an unlawful user of, or addicted to, any controlled substance" possessing a firearm mirrors the similar prohibition in 18 U.S.C. § 922(g)(3). Neither statute defines "unlawful user" or "addicted to." The meaning of "addiction" is straightforward: "The habitual and intemperate use of a substance . . . frequently and without the ability to stop on one's own." *Addiction, Black's Law Dictionary* (11th ed. 2019). The meaning of "unlawful user" is less clear, but prevailing federal caselaw holds that "unlawful user" is not the same thing as "addicted to," *see United States v. Bennett*, 329 F.3d 769, 776 (10th Cir. 2003), and that to sustain a conviction under § 922(g)(3) of illegally possessing a firearm by "an unlawful user of" a controlled substance, the government must prove "that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *United States v. Purdy*, 264 F.3d 809, 813 (9th Cir. 2001); *see United States v. Augustin*, 376 F.3d 135, 138-39 (3d Cir. 2004) ("Those of our sister courts of appeals that have considered 18 U.S.C. § 922(g)(3) have concluded, as do we, that one must be an unlawful user at or about the time he or she possessed the firearm and that to be an unlawful user, one needed to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm.") (collecting cases). "The use of the present tense"—criminalizing firearm possession by a person "who *is* an unlawful user"—"was not idle." *Augustin*, 376 F.3d at 138 (internal quotation marks omitted); *see United States v. Yancey*, 621 F.3d 681, 687 (7th Cir. 2010) ("Every circuit to have considered the question has demanded that the habitual abuse be contemporaneous with the gun possession.").

Had the jury accepted Hager's testimony that he overcame his addiction to methamphetamine by the time he turned 20, that the substance in the Facebook video was salt, and that his last use of methamphetamine was a single use in 2013, it might have acquitted him. But the jury was not required to credit Hager's testimony. And judged by *Middleton*'s highly deferential standard—could "*any* rational trier of fact ... have found the essential elements of the crime beyond a reasonable doubt"?, 114 Nev. at 1103, 968 P.2d at 306—sufficient evidence supports Hager's convictions on counts four through six. Regarding Hager's drug use, the State presented evidence that Hager was addicted to methamphetamine from 1997-2004, suffered a relapse in 2013, and also abused Oxycodone; that in the Facebook video Hager forwarded to the detective in 2016, Hager appears to ingest methamphetamine with firearms in the background; that in his interview with officers after his arrest for firearm possession, Hager admitted the substance in the video was meth; and that after searching Hager's house pursuant to his arrest, police found drug paraphernalia—a glass pipe and baggies. This evidence, although some of it circumstantial, is enough to show that Hager either maintained his prior addiction to methamphetamine or was using the drug regularly, proximate to, or contemporaneous with his firearm possession between December 2015 and April 2016. *See Canape v. State*, 109 Nev. 864, 869, 859 P.2d 1023, 1026 (1993) ("circumstantial evidence may constitute the sole basis for a conviction").

2.

Hager next challenges jury instruction 16, in which the district court stated the elements of the crime of possessing a firearm while an unlawful user of, or addicted to, a controlled substance. Over Hager's

SUPREME COURT
OF
NEVADA

(O) 1947A

17

objection, the instruction defined "unlawful user" as "a person who uses any controlled substance." Hager asserts that this definition of "user" was too broad and erroneously permitted his conviction based on a single use proximate in time to the illegal firearms possession charge, an invalid theory for conviction under NRS 202.360(1)(d). Although a district court has "broad discretion to settle jury instructions[,] we review de novo whether a particular instruction, such as the one at issue in this case, comprises a correct statement of the law." *Cortinas v. State*, 124 Nev. 1013, 1019, 195 P.3d 315, 319 (2008).

We noted but did not resolve the question of whether a person can be convicted of being an unlawful user of a controlled substance in possession of a firearm under NRS 202.360(1)(d) based on a single use of a controlled substance in *Byars v. State*, 130 Nev. 848, 860, 336 P.3d 939, 947 (2014). Consistent with the federal caselaw just discussed, *see* § II.B.1, *supra*, we hold that "an unlawful user" of a controlled substance for purposes of NRS 202.360(1)(d) is a person who regularly uses the substance, in a manner not medically prescribed, over a period of time proximate to, or contemporaneous with, possession of a firearm. Under this caselaw, a single use of the drug is insufficient to establish a person as an "unlawful user." *Augustin*, 376 F.3d at 139. As stated in *United States v. Burchard*, 580 F.3d 341, 346 (6th Cir. 2009):

> A one time use of a controlled substance is not sufficient to be an unlawful user under the applicable statute. Rather, the [d]efendant must have been engaged in the regular use of a controlled substance either close in time to or contemporaneous with the period of time he possessed the firearm.

SUPREME COURT
OF
NEVADA

(O) 1947A

Jury instruction 16 failed to capture the concept of regular use, proximate in time to the illegal firearm possession charged. Though the State argues otherwise, instruction 17, which added that "an unlawful user may regain his right to possess a firearm simply by ending his drug use," does not clarify that conviction must rest on more than a single contemporaneous use.

Under *Cortinas v. State,* 124 Nev. at 1026-27, 195 P.3d at 324, we must determine "whether the instructional error in this case is harmless beyond a reasonable doubt." Consistent with NRS 202.360(1)(d), instruction 16 allowed the jury to convict Hager based on his status as either an "unlawful user" or a person "addicted to" a controlled substance. The jury returned a general verdict, without specifying the theory on which it convicted him. It is possible that the error in defining "unlawful user" did not affect the verdict, since the jury could have convicted Hager on the theory he had been and remained addicted to methamphetamine when the alleged unlawful firearm possession occurred. But the State's search of Hager's car and house turned up no direct evidence of possession of methamphetamine—only a glass pipe and baggies. And from the evidence of Hager's drug use presented at trial, the jury equally could have convicted Hager based on the video that depicted him snorting meth in the presence of firearms in 2016—a single use that qualified Hager as an "unlawful user" due to the objected-to error in instruction 16. Because doubt exists as to whether a correctly instructed jury would have convicted Hager, it is not clear beyond a reasonable doubt that the misstatement of law in the instruction was harmless.

SUPREME COURT
OF
NEVADA

(O) 1947A

For these reasons, we reverse Hager's convictions on counts one through three and reverse and remand for a new trial on counts four through six.

_____Pickering_____, J.
Pickering

We concur:

_____Gibbons_____, C.J.
Gibbons

_____Hardesty_____, J.
Hardesty