# IN THE SUPREME COURT OF THE STATE OF NEVADA

LEONARD RAY WOODS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78816

FILED

NOV 03 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with use of a deadly weapon, two counts of capturing an image of the private area of another person, open or gross lewdness, and two counts of ownership or possession of a firearm by a prohibited person. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

Appellant Leonard Ray Woods argues that (1) the district court committed structural error during voir dire, (2) he did not knowingly and intelligently waive his right to counsel, (3) the district court abused its discretion in denying his motion to substitute counsel, (4) the State committed prosecutorial misconduct, (5) the district court erred in denying Woods's motion to suppress, (6) the district court allowed erroneous opinion testimony from a lay witness, (7) the district court failed to instruct the jury on all elements under NRS 202.360, and (8) cumulative error warrants reversal. We disagree and affirm the judgment of conviction.

*The district court did not abuse its discretion or commit structural error by modifying Woods's proposed voir dire questions*

Woods argues that the district court's modification or rejection of three of his proposed questions for the potential jurors was an abuse of

20-40001

discretion. We review voir dire decisions for an abuse of discretion. *Morgan v. State*, 134 Nev. 200, 210, 416 P.3d 212, 223 (2018).

Woods proposed, among others, the following voir dire questions: (1) "What are your views on the [S]tate having no physical evidence for conviction?"; (2) "Do you believe someone who falsely accuses another should also be punished?"; and (3) "Do you believe officers who tamper with evidence or lie in trial should be punished?" The district court rejected the first question, reasoning that asking the prospective jurors their view on the State's evidence before trial commenced was improper. Further, the district court found that Woods's questions about punishment were irrelevant because the punishment of others did not pertain to his trial. Nonetheless, the court modified his proposed questions as follows: "Anybody have any disagreement with the statement that police officers could potentially do inappropriate things with evidence in a case?" and "Anybody have any disagreement with the statement that witnesses sometimes could lie or not be honest or falsely accuse people of things?"

Woods has presented no legal authority to show that the district court improperly rejected or modified his proposed questions, so he has not shown that the district court abused its discretion. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). Regardless, the record shows that Woods did not suffer prejudice because the district court asked the modified versions of Woods's questions. Moreover, the record belies Woods's claim that the district court did not ask all jurors what they thought about false accusations: it asked all 32 jurors whether they had ever been falsely

SUPREME COURT
OF
NEVADA

(O) 1947A

accused of a crime.[1] Thus, we conclude that the district court did not abuse its discretion or commit structural error.

*Woods knowingly and intelligently waived his right to counsel*

Woods argues that his conviction requires reversal because he did not knowingly and intelligently waive his right to counsel in violation of *Faretta v. California*, 422 U.S. 806, 835 (1975). He specifically contends that the district court did not advise him that he would waive his right to supplemental voir dire.

We review a district court's decision on a defendant's right to self-representation for an abuse of discretion. *Vanisi v. State*, 117 Nev. 330, 341, 22 P.3d 1164, 1171 (2001). We also "defer[ ] to the district court's decision to allow the defendant to waive his right to counsel." *Hooks v. State*, 124 Nev. 48, 55, 176 P.3d 1081, 1085 (2008).

> To knowingly, intelligently, and voluntarily waive the right to counsel, the defendant should, [during a *Faretta* canvass,] . . . "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes wide open."

*Id.* at 54, 176 P.3d at 1084 (quoting *Faretta*, 422 U.S. at 835 (internal quotation marks omitted)).

Here, during the *Faretta* canvass, the district court explained to Woods the difficulties and nuances of jury selection and asked Woods whether he understood. He responded that he did. The district court also

---

[1]To the extent Woods is arguing that the district court erred by not asking other questions of prospective jurors who were eventually dismissed, he has not coherently explained how he was prejudiced by those alleged errors.

found that Woods was intelligent and capable of representing himself. Further, it explained to him the dangers and disadvantages of self-representation with respect to voir dire—and with self-representation in general—and he knowingly and intelligently waived his right to counsel. And contrary to Woods's contention, the district court at no point told him that he would be unable to conduct supplemental voir dire. Thus, we conclude that allowing Woods to represent himself was not an abuse of discretion.[2]

*The State relied upon facts not in evidence but this misconduct was harmless*

Woods contends that the State committed prosecutorial misconduct by relying upon facts not in evidence. We agree, but conclude that this misconduct was harmless.

We apply a two-step analysis to review prosecutorial misconduct claims. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). "First, we must determine whether the prosecutor's conduct was improper. Second, if the conduct was improper, we must determine whether the improper conduct warrants reversal." *Id.* (footnote omitted). "With respect to the second step of this analysis, this court will not reverse a conviction based on prosecutorial misconduct if it was harmless error." *Id.*

---

[2]Woods adds that the district court abused its discretion by denying his motion for substitution of counsel. We conclude that the district court did not abuse its discretion by denying Woods's motions because he did not show good cause for substitution of counsel, and his requests were based on the subjective belief that he and his attorney had a breakdown in communication. *See Gallego v. State*, 117 Nev. 348, 363, 23 P.3d 227, 237 (2001) (recognizing that good cause to establish a substitution of counsel is not determined by the defendant's subjective perceptions), *abrogated on other grounds by Nunnery v. State*, 127 Nev. 749, 776 n.12, 263 P.3d 235, 253 n.12 (2011).

"It is improper for the State to refer to facts not in evidence." *Rose v. State*, 123 Nev. 194, 209, 163 P.3d 408, 418 (2007).

Here, on cross-examination, the State asked a witness whether Woods was the only person who knew that Josie Jones's assailant drove a Ford Taurus, and the witness answered in the affirmative. Two previous witnesses, however, had testified that the assailant drove away from the murder scene in a Ford Taurus. Moreover, the State's closing argument misstated the precise testimony of D.L. and D.L.'s friend about threats Woods made to Jones, and the State mischaracterized D.L.'s testimony about Woods observing D.L. from a bathroom window while she undressed. Thus, by mischaracterizing the testimony, the State relied upon facts not in evidence, which constitutes misconduct.

"[T]his court will not reverse a conviction based on prosecutorial misconduct if it was harmless error." *Valdez*, 124 Nev. at 1188, 196 P.3d at 476. "If the error is not of constitutional dimension, we will reverse only if the error substantially affects the jury's verdict." *Id.* at 1189, 196 P.3d at 476. "The level of misconduct necessary to reverse a conviction depends upon how strong and convincing is the evidence of guilt. If the issue of guilt or innocence is close, if the [S]tate's case is not strong, prosecutor misconduct will probably be considered prejudicial." *Gaxiola v. State*, 121 Nev. 638, 654, 119 P.3d 1225, 1236 (2005).

The evidence of Woods's guilt was overwhelming. Crucially, Woods made a phone call from jail stating that he "did something to [Jones], but I don't think she's gonna make it." The jury listened to the audio recording of this call, and had the opportunity to compare Woods's voice with the person who made the phone call. Moreover, the phone number Woods dialed from jail was a contact in his cell phone. Three eyewitnesses

identified Woods as the perpetrator of Jones's murder, including D.L., who exclaimed during and after Jones's stabbing that Woods was the perpetrator. Two police officers testified that Woods approached them and admitted involvement with an incident at the same location where Jones was murdered. Thus, we conclude that the overwhelming strength of this evidence renders any prosecutorial misconduct harmless.

*The district court did not err by denying Woods's motion to suppress*

Woods contends that the district court erred by failing to suppress the contents of his cell phone. He avers that the State's 21-day delay between seizing his cell phone and applying for a warrant to search it was unreasonable under the Fourth Amendment.

"Suppression issues present mixed questions of law and fact. This court reviews findings of fact for clear error, but the legal consequences of those facts involve questions of law that we review de novo. The reasonableness of a seizure is a matter of law reviewed de novo." *State v. Beckman*, 129 Nev. 481, 485-86, 305 P.3d 912, 916 (2013) (citation omitted) (internal quotation marks omitted). The United States Court of Appeals for the Ninth Circuit has held that a 21-day delay between seizing an item and obtaining a search warrant was reasonable pursuant to the Fourth Amendment. *United States v. Sullivan*, 797 F.3d 623, 635 (9th Cir. 2015).

In *Sullivan*, the defendant was on parole and filmed a pornographic video with a 14-year-old victim. *Id.* at 628. During a parole search, officers seized the defendant's laptop, digital camera, and cell phone. *Id.* at 629. Officers, however, did not obtain a search warrant for the laptop until 21 days later, partially because they needed to transfer the laptop to a forensic investigator. *Id.* at 629-30, 635. The defendant cited *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) (holding that a 21-day

delay between seizure and application for a search warrant was unreasonable), to argue that the 21-day delay was unreasonable. *Sullivan,* 797 F.3d at 634. In rejecting the defendant's argument based on *Mitchell,*[3] the Ninth Circuit reasoned as follows:

> During the entire time period when the laptop was retained by the government, [the defendant] was in custody on eight parole violation charges. He does not claim that he could have made use of the laptop while incarcerated or that he sought return of his laptop to himself or a third party. Where individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is reduced.

*Id.* at 633 (citing *Segura v. United States,* 468 U.S. 796, 813 (1984) (plurality opinion)); *see also United States v. Johns,* 469 U.S. 478, 487 (1985) (holding that defendants who "never sought return of the property" failed to identify how "the delay in the search . . . adversely affected legitimate interests protected by the Fourth Amendment"). The Ninth Circuit also held that the 21-day delay was reasonable because the police needed to transfer the computer to a forensic investigator. *Sullivan,* 797 F.3d at 635. Thus, the Ninth Circuit held that evidence found on the laptop was properly admitted. *Id.*

---

[3]Other courts have declined to extend the holding in *Mitchell.* *See United States v. Christie,* 717 F.3d 1156, 1162-64 (10th Cir. 2013) (holding that a five-month delay was reasonable after an investigator obtained property lawfully "and retain[ed] it without objection"); *United States v. Stabile,* 633 F.3d 219, 235-36 (3d Cir. 2011) (holding that a three-month delay was reasonable under the totality of the circumstances).

Here, officers seized Woods's cell phone and 21 days later obtained a warrant to search it. The district court found that Woods never requested the return of his cell phone,[4] and that police officers initially seized the phone and then transferred it to detectives who performed a forensic investigation. Moreover, an officer declared in an affidavit that Woods's cell phone was impounded for transfer to detectives. The district court also found that Woods was in custody for four days following the seizure of his cell phone. He was arrested again following Jones's murder, which occurred before officers obtained the warrant to search his cell phone.

As in *Sullivan*, Woods's in-custody status for five days during the delay—and more importantly his failure to request the return of his cell phone—significantly reduced his possessory interest in it. *Id.* at 633; *see also Christie*, 717 F.3d at 1163 (holding that the defendant's failure to request the return of the property reduced his possessory interest in it). Also as in *Sullivan*, the delay here was partially because officers had to transfer the cell phone to detectives for a forensic examination. *See* 797 F.3d at 635. Thus, we conclude that the district court did not err by denying Woods's motion to suppress the contents of his cell phone.

*The district court did not abuse its discretion by allowing lay testimony*

Woods argues that an officer testified to an improper legal conclusion by affirming the State's question, "Is it illegal for someone who is a felon to possess firearms?"

---

[4]Although Woods stated that he had asked for the cell phone to be returned, the district court noted that Woods never alleged that in his written motions.

We review the decision to admit opinion testimony for an abuse of discretion. *See Watson v. State*, 94 Nev. 261, 264, 578 P.2d 753, 756 (1978) ("The admissibility and competency of opinion testimony, either expert or non-expert, is largely discretionary with the trial court . . . ."). "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." NRS 50.295. "[A] *direct* opinion on guilt in a criminal case [is] inadmissible . . . ." *Collins v. State*, 133 Nev. 717, 725, 405 P.3d 657, 665 (2017).

Here, the officer's testimony was not an improper legal conclusion, specifically because the testimony did not express a direct opinion on the guilt or innocence of Woods. The officer merely affirmed that the law prohibits a felon from possessing a firearm, so we conclude that the district court did not abuse its discretion by admitting his testimony.

*The district court properly instructed the jury on NRS 202.360's elements*

Woods argues that the district court failed to instruct the jury on an essential element of possession of a firearm by a prohibited person under NRS 202.360. He contends that the United States Supreme Court has held that, to secure a conviction for possession of a firearm by an ex-felon, the prosecution "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, ___ U.S. ___, ___, 139 S. Ct. 2191, 2200 (2019). Woods contends that we adopted all the elements of illegal firearm possession as articulated by *Rehaif* in *Hager v. State*, 135 Nev. 246, 447 P.3d 1063 (2019), and that the district

court did not instruct the jury on whether Woods knew he belonged to the class of persons barred from possessing a firearm.

"[W]e review de novo whether a particular [jury] instruction . . . comprises a correct statement of the law." *Cortinas v. State*, 124 Nev. 1013, 1019, 195 P.3d 315, 319 (2008).

In *Rehaif*, the Supreme Court concluded that a conviction for illegal firearm possession under 18 U.S.C.A. § 922(g) (West 2015) and U.S.C.A. § 924(a)(2) (West 2018) required the prosecution to prove that the defendant knew he possessed a firearm and that he knew he was barred from possessing a firearm." ___ U.S. at ___, 139 S. Ct. at 2200. In *Hager*, we explained the following with respect to Nevada's felon-in-possession statute:

> *Similar to its federal counterpart*, illegal firearm possession under NRS 202.360 has three main elements: (1) a status element (the defendant falls within one of the categories of person the statute prohibits from possessing a firearm); (2) a possession element ("[a] person shall not . . . have in his or her possession"); and (3) a firearms element ("any firearm").

135 Nev. at 249, 447 P.3d at 1066 (emphasis added).

The district court did not err by not instructing the jury that Woods had to know that he belonged to the relevant category of persons barred from possessing a firearm. *Hager* did not interpret NRS 202.360 as requiring the State to prove an element of knowledge. *Id.* Further, unlike the federal statute, NRS 202.360 does not require the State to prove the defendant "knowingly" possessed a firearm during sentencing. *Compare* 18 U.S.C.A. § 924(a)(2) (West 2018), *with* NRS 202.360(1). Based on the record,

we conclude that the district court properly instructed the jury on the elements of NRS 202.360(1).

Accordingly, we

ORDER the judgment of conviction AFFIRMED.[5]

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

---

[5]Woods also raises other issues pertaining to supplemental voir dire, the State's opening statement and use of PowerPoint, golden-rule arguments, references to his in-custody status and criminal history, and the State's use of leading questions—but he failed to preserve these issues with objections at trial, or objected but did not state the specific grounds, so we review them for plain error. *Vega v. State*, 126 Nev. 332, 338, 236 P.3d 632, 636 (2010); *see also* NRS 47.040(1)(a) (stating that parties must state the specific ground for an objection). Under plain-error review, the "appellant must demonstrate that: (1) there was an error; (2) the error is plain, meaning that it is clear under current law from a casual inspection of the record; and (3) the error affected the defendant's substantial rights." *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 415 (2018). Woods has not shown that any of the alleged errors affected his substantial rights, so he fails to prove any plain error. Further, none of the alleged errors would have affected his substantial rights because, as we discussed, overwhelming evidence supported the verdict. *Green v. State*, 119 Nev. 542, 548, 80 P.3d 93, 97 (2003). Thus, we conclude that none warrant relief under the plain-error rule.

Finally, Woods contends that cumulative error warrants reversal. We disagree because, consistent with the foregoing analysis, the State presented overwhelming evidence of Woods's guilt.

cc: Hon. Douglas W. Herndon, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk